IN THE

# SUPREME COURT OF JUDICATURE,

OF THE

## STATE OF NEW JERSEY,

### AT FEBRUARY TERM, 1836.

---

### DEN EX DEM. MINARD FARLEY v. WILLIAM CRAIG.

**A deed** contained a covenant, that if it should happen that any of the grants, or rents should be behind and unpaid, it should be lawful for the grantor, his heirs or assigns, to enter on the said land, in any part thereof, and distrain for the same ; and also this proviso, that if the rent should be in arrear by the space of twelve months, and no sufficient distress to satisfy the same, to be found on the premises then it should be lawful for the grantor, his heirs and assigns, to re-enter and re-possess as, in and of his and their former estate, and the grantee and his heirs and assigns thereon, and from thenceforth utterly to expel and remove, and put out, until the arrear of rent with all the charges thereon accruing, should be fully satisfied and paid. *Held*, that if the plaintiff enters by virtue of the clause of re-entry, he must show himself entitled to do so, by the terms of the contract ; he must show the absence of sufficient distress on the premises, or excuse himself from the necessity of making or attempting a distress. If the plaintiff is entitled to recover it must be under the special agreement and not upon the ground of

Farley *v.* Craig.

disloyalty, or disseisin at the common law. The action of ejectment has been submitted for the assize in those cases where a corporeal hereditament was its object, but not in the cases of incorporeal hereditaments, and especially of a rent.

This was an action of ejectment, in which a verdict had been rendered in favour of the plaintiff. A rule to show cause had been granted, which was once before argued, as reported in 6 *Hal. R.* 262; and now a second argument of the rule was had.

*Southard* and *Williamson*, for defendant, in support of the rule.

*Wall* and *Frelinghuysen*, for plaintiff.

HORNBLOWER, C. J. The material parts of the deed, on which the questions in this case, arise, and the facts of the case, so far as they are important to be considered, will be found stated by Justices FORD and DRAKE, in the opinions delivered by them on a former argument, and reported in 6 *Hal. R.* 262.

I fully concur with my brother FORD, in the opinions he then expressed on the following points: That the rent reserved to Logan, was *in fee ;* and not on a succession of terms for years: 2dly, that a rent charge may be apportioned; and 3dly, that when the right of entry for non-payment of rent, or for want of a sufficient distress, does not involve a forfeiture of the estate; but the grantee of the rent, is only to retain possession of the land, until the rent is paid, or until the arrears are satisfied out of the profits of the land; it is not necessary to make a demand of the rent, with all the precision and strictness required by the rules of the common law; in cases, where a forfeiture is the consequence of non-payment.

I also concur with Mr. Justice DRAKE, (and for the reasons assigned by him) that there was evidence, proper to be submitted to a jury, and sufficient to justify them in finding an apportionment, by contract, between the defendant and the lessor of the plaintiff; and also, that if the plaintiff's right of recovery in this action, is entirely founded upon the special terms of the contract, then the plaintiff was bound to show the absence of a sufficient distress on the land; or that he was hindered from making it. And further, that in this view of the question, the plaintiff could not excuse himself for not attempting a distress,

Den ex dem. Farley *v.* Craig.

by showing on the trial, a secret intention on the part of the defendant, to resist such attempt by force; an intention not manifested in any way, nor even known to the plaintiff, when he commenced this suit.

These several positions have been so fully established, in the opinions to which I have referred, that any attempt at further illustration, would only obscure what has been made abundantly clear.

It remains then to inquire, whether upon the whole case, and in view of the principles above conceded, the plaintiff is entitled to recover in *this action.*

There is no dispute, but that the plaintiff before the commencement of this action, was *seized* of the rent; the defendant having paid him the same, annually, for several years in succession; nor, but that there was at all times, a sufficient distress upon the land. But previous to the commencement of this suit, the plaintiff made a personal demand of the defendant, on the land, for the rent in arrear; when the defendant refused to pay him, and *denied* his right to receive it. This denial it is insisted, and must be admitted, was such a *disseisin* of the plaintiff's estate *in the rent,* as at common law, would have entitled him to an assize of *novel disseisin;* but it is further insisted, that the action of ejectment having taken the place of the old action of assize, the plaintiff is therefore entitled to recover in this suit.

This argument it will be perceived goes upon the assumption; 1st, That in an assize for RENT, the plaintiff recovered possession of the LAND ; and 2dly, that an ejectment will now lie for *a rent,* because an assize of *novel disseisin,* lay for it at the common law.

It has added no little to my embarrassment, to find by the report of this case in 6 *Halst.* 262, that on the former argument, it was taken for granted both by court and counsel, as it seemed to be on the last, that those positions were correct. Hence it became necessary for me to recur to the history of rents, and of the ancient writs of assize, which I have done, so far as time would permit; and the result has been a conviction, that the assumption in this respect, is unfounded.

VOL. III.—13

There are three kinds of rent, at the common law : 1, Rent service, which involves the relation of landlord and tenant ; the former having a *reversion*, and the latter invariably owing fealty and allegiance. To this species of rent, the law annexes upon feudal principles, the right of distress, as incident to the nature of the estate.

2, A rent seck; which is only a rent reserved, or granted by a deed in respect of certain lands; but *without any clause of distress.* It is barren, or naked, and unprofitable to the grantee; because until he has obtained *seizin* of the rent, he can have *no remedy* for the recovery of it.

3, A rent charge : and this like a *rent seck*, may exist, where the owner of the rent has no interest, estate or reversion in the land in fee simple ; as where a man grants to another, a certain rent, payable to him for life, in tail or in fee, with a right to distrain for rent in arrear. In this case the land is liable to a distress, *exclusively* by virtue of the clause in the grant, giving such distress; and therefore it is called a *rent charge*, in distinction from a *rent seck*, because the land is *charged*, (not with the rent itself, but) *with a distress ;* Litt. *Section* 217 ; *Co. Litt.* 143, *b.* 144 *a. ;* that is, the land is subjected to be entered upon for the purpose of levying a distress, upon such distrainable property, as may be found on the premises, for the payment of the rent.

The only difference then, between a rent seck and a rent charge, is, that for the latter the grantee may distrain, which he cannot do for the former. In other respects they are alike ; and an assize lies for the *one* as well as the *other*.

Let it be remembered, that the clause of re-entry for non payment of rent, or for want of a sufficient distress, or for breach of covenants ; (whether such re-entry is to avoid the estate, or only used as a means of compelling, or securing payment,) does not give character to the estate *in* the rent ; nor in any manner, affect, or alter the nature of the common law remedy by assize, for a *disseisin* of the rent. The remedy under and by virtue of the clause of re-entry, whether by writ of assize for the land, or by the modern action of ejectment, is

entirely of a conventional character; and has nothing to do with the action of assize, for the disseisin of a rent.

It is necessary also, to distinguish between the *estate* in the rent, and the *rent* itself; that is, between the estate, and the profits thereof. For a rent (rent seck, or rent charge) is an *estate;* and it is a *real estate;* an hereditament; though an incorporal one. It is *liberum tenementum;* a frank tenement; a freehold: 2 *Bl. Com.* 2*d* and 3*d Chapt.;* and therefore recoverable in a *real* action. For though such an estate, has only an ideal, or mental existence; yet if the owner of a rent, for life or in fee, was *disseised* thereof, he was entitled at the common law, to a writ of assize, *de libero tenemento*, against the disseisor.

But how was the owner of such an ideal estate, ever *seized* thereof? For until he was *seized*, he could not be *disseized*. The answer is, that the owner of a rent, became seized *thereof* by receiving the rent, or any part; the receipt even of one penny in the name of rent, constituted a seizin of the rent. *Co. Litt. Sections* 233-235-238.

The tenement, being incorporeal, the owner cannot have, nor can the law, by any action or process, that was ever devised, give him any other seizin of it. Hence it follows also, that the owner can never be *disseised*, in fact. But if his right to the estate, or his title to receive the rent, which is the same thing, be denied, in terms or by certain acts, such as forestaller, rescous, or replevin, either of which is a denial by law; the law, for the sake of the remedy, permits him to *fancy himself* disseised, that he may establish his title, in an action of assize of *novel disseisin*, 3 *Bl. Com.* 170, *Co. Litt. Sections* 588-589.

The questions then arise; 1st, What does the plaintiff in such action recover? And 2dly, How is it executed? I answer, he recovers *seizin;* the judgment is "*quod recuperet seizinam.*" But that is not all; LITTLETON says, in *Section* 233: If the tenant deny to pay, this is a disseisin, &c. and for this the grantee of the rent, shall have an assize and shall recover, what? the possession of the land? No; he shall "recover *the seizin of the rent*, and his *arrearages*, and damages and costs." Now, surely if he recovered his *rent in arrear*, as well as

damages and costs, the law would not also give him possession of the land ; that would be a double remedy.    But the author immediately adds, "If after such recovery and execution had, the rent be *again denied* unto him, then he shall have a re-disseisin, and recover double damages, &c."    This however, is a contingency, that could never happen, upon the supposition that the plaintiff in assize for *rent*, recovered possession of the *land*. 3 *Vin. Abr.* 171, *pl.* 17.

At the common law, there were two forms of writs of assize of *novel disseisin*, namely: 1st, an assize *de libero tenemento ;* and 2dly, an assize *de communiæ pasturæ.*    An assize *de libero tenemento*, lay of *land*, of *rent*, and of other things whereof a *præcipe quod reddat*, lay at the common law.    *Jehu Webb's Case*, 8 *Co.* 90, 3 *Vin. Abr.* 162, *tit. Assize A.* 2.    The writ in both cases, whether it be for *land* or *rent*, is general, *de libero tenemento ;* but the plaintiff in his plaint, makes title to his freehold in the *land*, or in the *rent*, as his case may be. *Fitz. H. N. B.* 178 *in brackets*, 412, *in marg. Co. Litt.* 158 *a.* 8 *Co.* 90.

Where the assize therefore, was brought to recover *land*, the plaintiff if successful, did recover *land ;* and when to recover a *rent*, he recovered not the land, but the *rent ;* that is *seizin of the rent*.    The judgment was the same in both cases ; *quod recuperet seizinam tenementum predictum, &c.*    The remedy was co-extensive with the injury.    If the plaintiff had been ousted of his *land*, he recovered seizin of that ; if, of his estate in a *rent*, he recovered seizin of that.    He was restored by the judgment of the court, to what he had lost ; and to have it again in the same manner he had it before.    How then was the owner of a rent, *seized* of it, before he was *disseized* by the defendant in assize?    Not by being in *possession of the land ;* but by being in the receipt of the rent.    *Litt. Section* 135, *Co. Litt.* 159, *b.* 160 *a.*    What then did the plaintiff lose by the conduct of the defendant ?    Not the possession of the land ; he only lost, (and that *in imagination only*) the seizin of his *freehold* in the rent.    To this therefore, he is *restored* by the judgment of the court.    But because upon this judgment, there is a writ of *hab. fac. seizinam*, it is argued that the Sheriff must put the

plaintiff in seizin of the *land*, because he cannot deliver seizin of the rent, which is an incorporeal estate. If this was so, it would not be a recovery by the plaintiff, a restoration to him of what he had lost. It would be an acquisition. Instead of *recovering* an incorporeal estate, he would *gain* a corporeal one ; he would sue for a *rent*, and recover *land*.

By whatever ceremonies the writ of *hab. fac. seizinam* may have been executed, it was done in effect, by putting the plaintiff in the receipt of the rent. I cannot conceive of putting a party in *seizin* of an incorporeal hereditament, by delivering to him the *possession* of land.

In answer to all this, it is said; 1st, That any person may maintain an ejectment for land, who has a right to the possession of it. This is granted; and let it be remembered too, that no person *can have* a right of possession, but one who has a right of entry upon land. 2dly, It is insisted, that the disseizee of a rent charge, has a right to the possession of the land " charged *with* the rent, and *pledged* for the payment of it." Now, in the first place, the land properly speaking, is not charged with the rent, it is only charged with a *distress* for the payment of it. *Litt. Section* 217, *and Co. on the text.* They are very different things ; the land is not the debtor. When it is said in the books, that the land is the principal debtor, it means only that the tenant is not debtor, but *in respect* of the land, as the rent follows the land ; *Walker's Case*, 3 *Co.* 22, *Kidwelly* v. *Brand*, 1 *Plowd.* 71. Nor 2dly, is the land " pledged " for the payment of the rent; not a foot of it can be sold at law or in equity, for any such purpose. And 3dly, to say that the *disseizee* of a rent charge, has a right to the possession of the land, is to assume the very point in debate.

But it is said again, that the disseizee of a rent, may have an assize ; that an assize is a real action, and it must therefore be for *land*, and cannot be for *rent*. That an assize of *novel disseizin*, is a *real action*, there is no doubt; but why cannot an assize be brought for a *rent*, as well as for *land?* If it is only meant, that it cannot be brought for *the rent*, that is, *for the money* due on a rent, it is granted ; for a real action cannot be brought to recover a debt. But if it is meant to be asserted, that an assize

will not lie to recover seizin of a freehold estate *in a rent*, it is directly in the face of all our books; "a rent," in contradistinction to *land*, is one of the very things for which, the books tell us, an assize *de libero tenemento*, did lie at the common law. (Cases before cited.) And what renders this argument still more singular, is that *a rent* is one of the very things, for which BLACKSTONE says, an *ejectment* will *not lie;* because (he says) an ejectment will lie, *only* where the plaintiff has a right of *entry;* but as no entry can in fact be made on a *rent*, it being *an incorporeal estate, none* shall be supposed by any fiction of law: 3 *Bl. Com.* 506 ; and yet the argument is, that in an assize for rent, the plaintiff does recover the *land*. If this is true, the commentator's premises are false, and his conclusion fails ; and consequently, an ejectment will lie for a rent; for the *land*, the thing to be recovered in the action, may be entered upon.

It does seem to me, that there must be some misapprehension of the nature of the action of assize, for a rent ; some confusion of ideas, arising perhaps, from not distinguishing between the *freehold estate in the rent*, and the rent itself. The assize is not brought to recover the *money* due *for the rent;* but it is brought to *try the title* to the *freehold estate in the rent*, and to recover seizin, not of the *land*, but of that *freehold*. 3 *Bl. Com.* 170, *Co. Litt. Sections* 588, 589.

Again: It will be admitted that an ejectment is founded on a right of *entry*, and will not lie in any case where the plaintiff has no such right. But the owner of a rent seck, has no right to enter, not even to levy a distress ; therefore he cannot bring an ejectment; and yet such owner may have an assize of *novel disseizin.* So too in the case of a rent charge; the owner has no right of entry, except for the restricted purpose of making a distress ; yet he may have an assize. And surely it will not be pretended, that either in assize or any other form of action, a man can recover the possession of *land*, unless he is entitled to that possession, and had a right to *enter upon the land*, before the action was commenced.

But it is supposed, that the moment the owner of a rent is disseized, he acquires a right to enter upon and take possession of the land.

Den ex dem. Farley *v.* Craig.

It would indeed, be singularly inconsistent with the sound and rational principles of the common law, if a man having no estate *in land*, and no right to enter upon it, should be able to *imagine* himself into a perfect title at law.    This is certainly giving a magical influence, and a most potent effect, to a mere fiction; a *fancied* injury; a disseizin, not in truth and in fact, but only in the caprice and election of the party !

But I apprehend it is a mistake.    If the plaintiff in an assize for rent, at the common law, recovered actual possession of the land, what I would ask, is the use of inserting a clause of re-entry, for non-payment of rent, or for want of sufficient distress; *since*, upon a mere delay of payment, the owner of the rent, may by a secret act of volition, elect or fancy himself into a perfect right of entry, without any such clause, and be judicially put into possession of the land, and the reception of the profits ? Nor does the injury stop here; for it remains to be asked— what estate in the land, the plaintiff in assize becomes seized of ? What is the nature and duration of the possession thus acquired ? Is it to be co-extensive with the plaintiff's estate in the rent, whether that be for life, in tail or in fee?    If it be answered that the plaintiff is to retain possession until the rent is paid, or until he is satisfied by the reception of the profits, then, I ask again, of what use is the conventional clause, giving a right of re-entry, since the law, tacitly annexes that right to the estate in the rent, upon every delay or denial of payment?    But if such is the legal effect of recovery in assize of rent, where is the book, or case, or authority, that sustains such a doctrine ?— Where do we read, that after a recovery *in assize for rent*, the owner of the land shall be restored to his possession, on payment by him, of the arrears; or when the plaintiff has received satisfaction out of the profits ?    No where, I confidently answer, except in those cases where a right of entry or re-entry, has been granted or reserved for non-payment of rent; or for want of a sufficient distress.    But this conventional right of re-entry, is a very different thing, from the common law remedy for the disseizin of the rent, by an assize of *novel disseizin*.    So far are they from depending on the same principles, and being co-exten-sive remedies, that they are absolutely *incompatible with each*

*other.*   The one is in *affirmation* of the rent, the other in *avoidance* of it.   *Litt. Sect.* 341, shows that if there is a clause of *re-entry,* the owner of the rent, must make his *election,* either to *enter under that clause,* or to have an assize.   This is utterly unintelligible, if in assize, the plaintiff recovered the possession.   COKE, on the text just referred to, says, "If the condition be broken, yet if the feoffer," (of the land) "bringeth an assize for the rent due at that time, he shall *never enter* for the condition broken; *because,* by the assize he *affirmeth* the rent to have continuance; and thereby waiveth the condition."  And see also, *Litt. Sect.* 219; *Co. Litt.* 144, *a.; Hayward's Case,* 2 *Co.* 35, and *Pennant's Case,* 3 *Co.* 64.   What, I ask, can all this mean, if in an assize for rent, the plaintiff did recover the possession of the *land?*

In *Maund's Case,* 7 *Co.* 112, the difference between the two remedies is clearly marked.   It was in replevin, and it was resolved that to justify a distress, the rent need not be demanded *at the day, &c.* as it should be in case of *re-entry,* where the estate or any sum, *nomine pœnæ,* shall be forfeited; but, upon demand made *after the day,* upon the land, although the tenant be not there, and none ready to pay the rent, "*it is a denial in law,* upon which he who hath the rent, shall have an assize, for as much as no penalty will ensue thereon, but only to have remedy to recover," (what? the land? No: but) "*his rent,* and the arrearages, with costs and damages."   Where, I pray, is the sense of this distinction, if in assize, the plaintiff besides recovering his rent in arrear, with damages and costs, recovered also the possession of the land?   Why say to him, if you seek by ejectment or otherwise, to get possession of the land under the clause of *re-entry,* you must show demand *at the day, &c.;* but you may bring an assize, and thus get *possession of the land,* and your rent in arrear too, upon a mere *denial* of the rent; and even an implied denial; and that too, upon demand made on *any day* after rent due?   In short, I lay it down as incontrovertibly true, in the case of rents, (rent seck or rent charge) that the owner of the rent, can only enter upon and recover possession of the land, in virtue of *a clause of re-entry;* and *never,* upon the common law ground of a *disseizin* of the rent.

Den ex dem. Farley *v.* Craig.

Such clauses were usually inserted in the deed, or reserved in the grant or devise ; and hence, what is said in the books upon the right of re-entry. 3 *Cruise's Dig.* 331, *tit.* 28, *Ch.* 1, *Rents, sect.* 76 ; *Jemmot v. Cowley, T. Raym. R.* 135, 158, *Litt. sects.* 325, 327. But, as I have said before, such clause is not essential to the creation of a rent. There may be a rent seck, or rent charge, without it ; and the question is, upon the *common law remedy* of assize of *novel disseizin,* in the *absence* of any such clause. It seems to me, the difficulty arises from confounding the action of ejectment, with the action of assize for rent.

It is true, the action of ejectment, is now the common method of *trying the title* to lands or tenements. 3 *Bl. Com.* 199. But the same author says, " it is not an adequate means to try the title to all estates : and that it will not lie for a *rent,* or other incorporeal estate, because no entry can be made upon it." 3 *Bl. Com.* 206. But *assize,* did always lie for a *rent,* as well as for land. The *ejectment* then is a substitute for *an assize,* only in those cases where the party had a right of entry, and where the thing to be recovered was of a corporeal nature, and was capable of being seen, handled and entered upon. How then, can it be pretended, that in assize for rent, the plaintiff recovers the land ?

Again : If a man levies my rent of my tenant, by coercion, I may have an assize of *novel disseisen* against him. *Litt. sect.* 589, 3 *Vin. Abr.* 173, *E.* 3, *pl.* 7, *Fitz. N. B.* But, surely I cannot turn the tenant of the land out of possession, because a stranger, against his will, and without his fault, hath disseised me of my rent. *Webb's Case,* 8 *Co.* 90, before cited.

Still, it may be asked, how the writ of *hab. fac. seizinam* of a rent, was executed, since no actual possession could be delivered of such an estate ?

In *Shelley's case,* 1 *Co.* 94, 97, *et. seq.* it is said, that in some instances, a recovery *is executed* in judgment of law, *presently* after the judgment. 1st, Where, by reason of some particular circumstances, the party cannot immediately enter ; and 2dly, where the interest, right or estate recovered, cannot be entered upon, and is in its nature not capable of an actual delivery, or transfer of possession ; " as if a fine be levied of a reversion, or

of a seignory, or of any thing which lieth in *grant;* there the thing recovered passeth presently." So if a man hath judgment to recover *a rent,* or any thing which lieth in grant; there the thing so recovered, *is in the recoverer, by the judgment,* that is "*the demandant is in seizin immediately,* by the judgment." And the book adds, "so it appears, that *a thing* which lieth *in grant,* is more easily transferred from one person to another, than an estate of freehold in possession."

Hence, it appears that the plaintiff in assize of rent, stands seized immediately upon the judgment, *quod recuperet seizinam;* and when his rent in arrear, is levied under the execution and paid over to him, he has seizin in fact, so far as in the nature of things, he can have such seizin ; and *that* is *all* the seizin he had, before he was disseized. But yet it was usual to execute the writ of *seizin* in such cases, with some ceremony; though I do not believe it was essential. In *Fitz. N. B. fol.* 197, *in brackets,* 412, *Lett. D. Hale's ed.* 1793, it is said, "If a man recover a rent, the Sheriff may put him in seizin, by wood, or by any parcel of the land out of which the rent is issuing." This passage is relied upon, as conclusive, that the plaintiff recovers possession of the land; but I think otherwise, for reasons I shall presently assign.

Dalton says, "if the recovery be of rent, the Sheriff may put the party in seizin *thereof,*" not of the land, but "*thereof,*" that is of the rent, "by the corn or grass growing on the land, out of which the rent is issuing ; or by the twig or bough of a tree, growing upon the same lands ; or by distress of cattle *levant* and *couchant,* upon the same land ; and this is good seizin of the rent, notwithstanding the day of payment of the rent, be not yet come." *Dalt.* 255. And IMPEY says, "if a man recover *rent* or common, and the Sheriff comes upon the land, and delivers seizen of the rent or common, by *word only,* this is well done, and the recoverer is in actual possession of it." *Imp. Shff.* 166, which cites, *Roll. Rep.* 420, *Bridge.* 56 ; *Floyd* v. *Bethel, br. seizin pl.* 36, and 2 *ass.* 24. But what does all this prove ? That the Sheriff puts the recoverer in actual *possession* of the lands? Certainly not ; his writ does not authorize him to do so. He has not a writ of *hab. fac. possessionem,* which is the *only proper* writ

Den ex dem. Farley *v.* Craig.

upon a judgment in ejectment. On the contrary, it is a writ of seizin; not of the land, but a writ commanding him to put the plaintiff in seizin, or to cause him to have *seizin of the rent;* that is, of his estate *in the rent.* The judgment was *quod recuperet seizinam tenementum predictum ;* that is, the freehold mentioned in the plaint, which was a rent; the execution must follow the judgment, and therefore, it commands the Sheriff to give the plaintiff seizin of the *rent;* not of the land. Whether therefore, by twig or turf, or by whatever ceremonies the writ is executed, it can give to the demandant, seizin only of the estate recovered. Seizin of land, if land is recovered; and of rent, if rent was recovered. Seizin and possession are different things. An *assize* is a real action; an *ejectment* is a possessory one.

Much reliance has been placed on the case of *Jackson* v. *Collins*, 11 *Johns. R.* 1. That was a case between *landlord* and *tenant*, and the action was founded and maintained by the court, on the ground of an open and palpable *disclaimer* of the landlord's title. The action was not sustained upon the idea of a disseizin of a rent, at the common law. The lessor having a right of *re-entry*, was entitled to an action of ejectment. The only and great question was, whether he could as landlord, maintain the action on the ground of a *disclaimer* by the tenant; or whether he must legalize his re-entry, by showing a want of distress on the premises, or a breach of the covenant. Now, where the relation of a landlord and tenant exists, as the court admitted it did in that case, the doctrine of *disclaimer* applies with all its force, and works a forfeiture of the estate. But no such relation exists in this case. The rights of the parties, so far as relates to a re-entry on the land, are purely conventional. No disclaimer, or denial of rent, works any forfeiture of the estate. There is no reversion in the plaintiff, and therefore there can be no disloyalty to him. A disclaimer or denial of the rent, would be, if the plaintiff choose to consider it so, a *disseizin* of his estate *in the rent*, for which at the common law, he might have had an assize. But it could never give him any estate in the land, nor any right of entry thereon; and without such right, he cannot have an ejectment.

Den ex dem. Farley *v.* Craig.

If therefore the plaintiff, in this case, is entitled to recover, it must be under the special agreement of the parties ; the clause of re-entry ; and not upon the ground of disloyalty, or *disseizin* at the common law. But if the plaintiff enters by virtue of that clause, he must show himself entitled to do so, by the terms of the condition. He must show the absence of a sufficient distress on the premises, or excuse himself from the necessity of making, or attempting a distress, or he cannot recover.

This, in my opinion, the plaintiff has failed to do, as I have already intimated ; and judgment must be entered for the defendant.

FORD, J. This is an action of ejectment, by Minard Farley, to recover the possession of certain land, out of which he claims to have a yearly rent issuing to himself and his heirs forever, of which, he says, he has been disseized by William Craig the tenant of the freehold ; and he brings this ejectment to recover and hold the land itself, until he can make the rent arrear out of the issues and profits. The two Justices who heard the first argument of this cause, delivered their opinions unanimously— that Minard Farley and his heirs are lawfully entitled to a yearly rent out of the land in question forever ; that he and his predecessors have been in the full seizin and enjoyment of it for many years ; that he is now unlawfully disseized of it, by William Craig, who is tenant of the land, in fee simple, subject to the rent charge in question ; they however differed about one other point in the case, the effect of which was, that no judgment could be delivered either way. Wherever a person has a right to the possession of land, he may recover it, in ejectment. One of the known remedies at common law, for disseizin of a freehold rent charge upon land, is by assize of *novel disseizin.* *Gilbert on rents*, 100 ; *Com. Dig. assize B.* 2. This is admitted. If he recovered the land itself *in the assize*, he has a right to recover it *in ejectment*. But here, there are two opinions.— Mine is, that he recovered the *land and damages both ;* the other is, that he recovered *no land*, that he recovered *damages only*. To the former proposition, I mean now to confine myself, and prove that in the assize, he recovered the land itself, that is, the thing pledged for the payment of the rent.

Den ex dem. Farley *v.* Craig.

1. I think this could be most clearly inferred, from considering the nature of *rent,* and the nature of an *assize.* Rent is altogether incorporeal, a mere creature of the mind, without physical dimensions or properties ; it is neither tangible nor visible to any of the bodily senses. On the other hand, an action of assize is a real action, which lies only to recover lands and things of a corporeal nature. No real or mixed action was ever brought for an incorporeal thing, of which, the Sheriff cannot deliver possession. If ever there was such a strange thing in law, as a real action for an incorporeal thing, some record, entry, *dictum* or case of the kind, ought to be produced by the advocates for it ; and if no such thing ever has or can be shown, then it follows from the nature of assize as a real action that it is for the land itself, and this argument would appear to me absolutely conclusive, that the action must be for a corporeal tenement, if it stood alone. This however, is so far from being the fate of the argument, that it has the support of every author to be found. Baron Comyns, says—" A writ of assize, lies for the recovery of lands or tenements ; " *Com. Dig. assize A.* Now, how will damages be made out to be either ? If damages only are recoverable, there is a very bold mistake in Blackstone, who calls an assize, " an action for recovering the possession of lands." 2 *Bl. Com.* 185. There must be a mistake equally gross also in Dyer, where it is said, the plaintiff in assize, " recovers seizin of the thing put in plaint." 1 *Dyer Rep.* 84, 6. Now, rent is not a thing ; it is not discernable by the bodily senses ; it is merely an idea of the mind ; and that a real action will lie for a mental idea, seems to me, to be very strange doctrine.

2. But the most conclusive evidence, that assize will lie only for a corporeal tenement, is to be found in *the* writ itself. I say *the,* because there is in effect, but one only writ of assize of *novel disseisin,* to be found in the register, from which I quote it as follows—" To the Sheriff, &c., A hath complained to us, that B unjustly, &c. hath disseized him of his frank tenement *in C ;* therefore we command you, that you cause *that* tenement to be re-seized, with the chattels that in it were taken, and that tenement with the chattels, to be in peace, till the first,

assize, &c. and in the mean time, cause twelve free and lawful men of that venue, to view that tenement, and their names to be impannelled, and summon them, &c. to make recognizance, &c. and have there," &c.

Now, a writ of assize of *novel disseizin* in any other form than this, is unknown in law, and contains a full demonstration, that it lay only for a corporeal tenement. It is said that freehold-rent is a branch of real estate, that it is a tenement, that there may be judgment to recover seizin of such tenement, and that the plaintiff will have seizin, where the rent arrear is levied by the Sheriff on execution, and paid over to him. But though a freehold-rent is real estate and a tenement, it is an incorporeal tenement, and therefore is not such as is demanded in the writ, but is a totally different affair. Blackstone calls *land* a corporeal thing, of a substantial permanent nature, that may be seen and handled, and that it is *not* rent; for rent, he says, is incorporeal and invisible, having only a mental existence. It cannot be difficult to see, which of these two kinds, so different from each other, is demanded in the writ.

1st. It does not mention tenement in the abstract, which might mean of any kind, or any where; but it demands a tenement in C, that is in the county of C; one that has a physical corporeal location. Now, how can this writ possibly apply to an incorporeal tenement, such as rent, which being wholly invisible and mental, is necessarily without location, just as much so as love, faith, wit, or any other mental existence. Theologians will sometimes give faith, a location in the *heart;* poets locate wit in the *eyes*, while the old metaphysicians locate all such creatures of the mind, on the penial gland; if we invent an assize for this invisibility called rent, it will be necessary to alter the writ, by striking out this old location *in a county*, and assigning to this new tenement, (since it is no more than a phantom) its appropriate location in the brain. But until the writ of assize shall be legally altered, it will manifestly lie for only a *corporeal* tenement.

2d. But there is still further proof in the writ, of its lying only for a corporeal tenement, from the Sheriff being commanded to seize it, and keep it in peace, till the assize (meaning

Den ex dem. Farley *v.* Craig.

the court of assize) shall come. Now it is not impracticable to seize a corporeal tenement, and we find in Bacon's abridgement that, " by the original practice, the Sheriff used to take the tenement into his own possession, till the right was tried ; but because it proved inconvenient, as the Sheriff could not turn it to the best advantage, the practice was altered, and the tenant was continued in possession, *till* judgment." *Bac. abr. assize A.* Whether the disseisin was effected by non-payment of rent, or any of the hundred ways in which it might be done, the writ of assize was brought for the corporeal tenement, as we learn, not alone from its location being given, but from this equally decisive fact, that the Sheriff was commanded to seize it; and that formerly he did take it into possession, until the practice changed, and the tenant was allowed to remain in possession—but the author adds, only *till judgment*, plainly signifying that if the plaintiff recovered judgment in assize, it terminated the possession of the tenant. Now, if the writ of assize lay for a tenement that was incorporeal and invisible, how could it command the Sheriff to *seize* such a phantom ? As well might Macbeth seize the airy dagger, which was only a vision of the brain. The Sheriff would have wanted some such a deputy as Pug, or some other master wizard, to execute the writ.

3d. Another unanswerable proof that the writ of assize always demanded a corporeal tenement is, that the Sheriff was commanded to summon a jury of twelve men of the vicinity or neighborhood, to view it. Now if the writ was for an invisible incorporeal tenement, the process was certainly misdirected to the Sheriff; it should have been addressed to some trusty spirit like Ariel in the Tempest, for how could flesh and blood view what was not to be seen ?

Thus we have a full moral demonstration, that the writ of novel disseizin was a real action, that lay only for a *corporeal* tenement ; and upon this evidence I rest my opinion, being well assured that no writ, entry or record either, has been, or can be adduced to the contrary.

But candor requires me not to overlook the theory of the opposite doctrine, however new I may suppose it to be, and

therefore I will answer the difficulties that have been suggested to me, not pretending to answer such however, as up to this time, I have heard nothing about.

1st. It is asked whether the books do not familiarly and constantly speak of "an assize for rent," and what is *rent* but an incorporeal tenement? I admit that the books often use the concise expression of "assize for rent," but it is merely to avoid circumlocution, for their meaning is "an assize for *land* out of which rent is issuing." I assert that there is no such writ in the register, as a writ of assize *for rent*, and if there is, it ought to be produced, or else it ought to be shown that an assize *for rent*, does not require a writ, and that this novel action will lie without one. A call to show one or the other, is deemed to be a modest request, or else to concede that the language is no more than a concise expression, to save circumlocution.

2d. It is asked whether assize is not given by *Stat. West.* 2, *cap.* 25, for profits · *appendent,* and *offices,* 2 *Inst.* 408? And whether such profits and offices are not incorporeal hereditaments? I answer that they are so; but my astonishment is, that a reader of that statute, should ask the question, seeing it declares that the plaintiff in those cases, shall have *none other than the same common writ,* which we have seen lies only for a corporeal tenement, in which he is to take his profits or exercise his office. How can a person and his heirs exercise the incorporeal right of taking mast, gathering estovers, collecting tolls, or exercising the office for instance of parkkeeper, *in the land of A,* without being in possession of the land of *A, so far as is necessary for these purposes?* Now if A turn him out of the land, and the plaintiff bring the common writ of assize, and have judgment to recover his seizin and damages for the wrong, does any lawyer suppose he will not have a writ of seizin to restore him the possession of the land, as formerly, *for these purposes?* that his only remedy is damages? and for subsequent disseizins, double damages?— if so, he can never recover any thing but commutations; and the inheritance, as real estate to him and his heirs, is merged in damages and lost forever. This injunction in the statute of

Den ex dem. Farley *v.* Craig.

*West.* 2*d*, to use none but the common writ for a corporeal tenement, is so scrupulously observed, that in an assize for the *office* of filazer for life, of the Court of Common Pleas, which was exercised in the court room, the assize was brought for pillar or post in the hall, *by which* was his official seat, and the case states that the *post* was put in *view* of the jury. 2 *Dyer's Rep.* 114, *b.* Does any lawyer doubt but on a judgment to recover seizin of the tenement, he had a writ of seizin to the Sheriff, who restored him to that seat and station by the post, from which he had been ousted, and where the office was to be exercised? Can it be believed, that if the disseizor elected from time to time, to pay damages, that the wrong-doer could keep the true owner out of his place during his life, lawfully, and that the law had no means of restoring him to his estate? Yet such would be the inevitable, but monstrous consequence of a real action of assize for an incorporeal hereditament, with an execution for *damages only.* Lord Coke reminds us again and again, that these incorporeal profits and offices, are required by the words of the statute to be " *in loco certo,*" exercisable *in a* corporeal hereditament with which they are inseparably connected, and without which, they cannot exist; and that the ordinary writ of assize in the register, for the corporeal tenement, is the only one they are allowed to use. Take this into view, and the practical exposition of it in *Dyer*, of an assize for the *post*, and what becomes of this novel idea of an assize or real action for the *incorporeal* offices or profits in question? It is a phantom that has its proper place, not in the common or statute law, but in the brain.

3d. It is insinuated that this writ of assize in the register, is an old, empty, formal thing, common to all cases, and that the plaint or declaration, the plaint, is the material part which sets out the title. Now if the writ is despicable because it is old, the common law may be despised for the same reason, for they are nearly of the same age. Its being common to all cases, shows only the comprehensive intelligence of the Court of Chancery, in which it was devised. Does not the modern ejectment enjoy a like pre-eminence of applicability to all cases, let the title or interest in the land be what it may; and how can this, which is

Den ex dem. Farley *v.* Craig.

the perfection of both actions, be converted into a reproach? The plaint however is selected for encomium, as if it did something more than amplify the demand in the writ, by setting out the particulars of time, place and essential facts in support of the demand.   Aye; but the plaint set out the title.   Truly it did so; but the title *to what?*   It may as well be answered a title to the moon, as a title to rent; for one is just as much demanded in the *writ*, as the other.   It set out the plaintiff's title to the corporeal tenement, demanded in the writ.   If it did not set out his title to that, it would be as signal a case of departure in pleading, as to sue out a writ on a bond, and then declare for a sheep.   The plaint set out the plaintiff's title to the *land*, by showing that it was charged with a fee simple rent, and pledged for the payment of it; that the rent had been demanded on the land, and been refused by the tenant, whereby the plaintiff became entitled by the law of the land, to have possession of the corporeal tenement so pledged, until he could make the rent arrear, out of the issues and profits.   The tenant might dispute every link in this chain of title; he might deny the existence of any such rent-charge on the land, and call for the production of the deed; when that was proved, he might deny that any of the rent was arrear; that being proved, he might deny that it had been demanded on the land, and refused. When all these things were proved, the chain of title was established, and the judgment was, that the plaintiff recover seizin of the tenement, with his damages and costs.   The judgment is set forth in *Bac. Abr. Assize A.* in these words— " The damages being assessed by the jury, are awarded, *as well as* the frank tenement."   Not damages only as is now pretended, but *the* frank tenement also.   Nothing else can be understood by *the* tenement, but the corporeal tenement for which the writ was brought.   In *Jac. Law Dic. Assize*, the words are—" After the trial the court gives judgment, and the plaintiff is to have a writ of seizin."   Is this writ to be for an incorporeal thing, a phantom called rent?   The words in *Com. Dig. Assize, B.* 26, are these—" The judgment in assize is, that he recover seizin of the tenement in the plaint, by the view of the recognitors; " thus designating as strong as language can do so, the corporeal

Den ex dem. Farley *v.* Craig.

tenement demanded in the writ, and put in view of the recognitors.

4th. It is admitted that assize was a real action to recover land where the plaintiff had been disseized of *land* ; but where he had been disseized only of *rent*, the judgment was, that he should recover seizin of his rent ; the arrears of which were assessed in damages, and being levied out of the tenant's goods under an execution, and paid over by the sheriff to the plaintiff it became a re-seizen of the rent, and he was restored to all that he had lost. This theory supposes, where the assize was for *rent*, the plaintiff had execution for the amount in arrear, but had no writ of seizin to recover possession of the land out of which the rent was issuing. Now, I will cite one passage from a standard work of great authority, touching a judgment and execution in assize for *rent*, that will show that the plaintiff recovered the *land out of which the rent was issuing*, and the Sheriff delivered him possession of it by *twig* and *turf* which was the most solemn form of making livery of seizin, known to the common law ; and thus extinguish this new theory forever. I quote from the *Natura Brevium*, compiled by the learned and venerable Judge Fitzherbert, and edited afterwards by two of the greatest sages in the law, first by Rastall and afterwards by Hale. The passage is in the following words—" If a man recover a Rent, the sheriff may put him in *seizin* by wood, or by any parcel of the land out of which the rent is issuing." *Fitz. Nat. Brev.* 443, *G.*, under the head " writ of assize of *novel disseizin.*" *Dalton*, 255, *Impey*, 166.

Thus the assize was an efficient remedy for the owner of the freehold rent, by putting him in possession of the land out of which it was to issue, until he had made it out of the profits that were charged with it; and it was very equitable as regarded the tenant, for he might pay what was arrear, and stop such possession, at any moment he pleased. *Co. Litt.* 202, *b.* 203, *a.* Now, can a reason be assigned why the land, which in a rent-charge is pledged for the payment of rent, should not in law be answerable for it? The land is the thing principally relied on, in a rent charge, which being limited to heirs, includes the heirs of heirs

*in infinitum*, and takes a destination to the latest posterity. The tenant of the land for the time being, is miserable security for such a duration of time; he appears on the stage of time and goes off like a vapor; he is here to-day, and to-morrow in a strange country from whose bourne, as the poet says, no traveller returns, but the land remains, and Lord COKE calls it the principal debtor. *Co. Litt.* 201 *b.* The same law is more fully expressed in 1 *Plowd. Rep.* 71, in these words—" For the rent is payable only *on* the land, and the land is the debtor; for in assize for the rent, the land shall be *put in view*, and he shall distrain *in* the land for the rent; so that the land is the *principal debtor*, the original and most effectual debtor." The reasons is then a strong one, why the principal, original, and most effectual debtor should be liable in law, for the rent; but the new theory discharges the principal debtor forever; according to it, the assize is a remedy only against the person for damages; and if he is not able to pay the judgment, the rent is lost. Now suppose the tenant should have no goods, and the land was put out on a lease for fifty years, and that lease assigned *bona fide* to creditors, or otherwise legally transferred out of his hands, how is the rent ever to be recovered, after being merged in this new theory judgment? It is lost forever; and the principal debtor, instead of being subjected to the charge, is exonerated and set free. Thus this old venerable assize for the recovery of land, fades away into a mere remedy against the person; and no remedy against the land, is provided by the common law.

5th. A recovery of damages against the person only, would be the destruction of it as a rent-charge on land, just as much as a recovery in a writ of annuity. The books ascribe to a rent-charge in fee simple, a double aspect; real, as against the land; personal, as against the person; but it cannot be enforced both ways. If a remedy is once taken against the *person*, as by a writ of annuity, it discharges the land forever after. *Gilb.* 126 *Litt. sec.* 119, *Co. Litt.* 145; *Bac. Abr. Dower, B.* 2. Therefore a personal judgment for the rent, against the tenant, would destroy the charge on the land, forever.

6th. It was objected on the former argument, that the deed gives the grantor, a power to distrain ; but if there be no sufficient distress on the land, then he may enter and hold till he is satisfied of the issues and profits, and he can have no entry contrary to this grant. Now I have shown that in a writ of assize, the plaintiff recovers the corporeal tenement, by force of the common law; that in the precise case of an assize for rent, he shall recover possession of the land out of which the rent is issuing, by twig and turf; and the assize is not the gift of the deed nor of any private party, but of the law. It is laid down in *Gilbert on Rent* 125, that " If A grants a rent charge to B and his heirs ; if the rent be behind, not only the grantee, but his heirs *in infinitum*, may forever pursue their assize and writs of disseizin." Now the deed does not take away the action of assize, by any express words, for the assize is not mentioned in any part of it, and it certainly cannot be taken away by implication. Even the omnipotence of a statute, cannot do it without words, or what is called a necessary implication ; without which, the statute could have no operation, and would become a dead enactment. The intent of the deed, was to provide shorter and more expeditious means for the recovery of rent, than an assize, if the party saw fit to employ them. They are merely additional, supplemental and cumulative. Instead of being at all compulsory, the language of the deed makes them entirely optional. It says,. if the rent be behind, " it shall be lawful for him to distrain ;" if no sufficient distress can be found on the land, " it shall be lawful for him to enter." The plain meaning is, he may distrain ; but does *may* mean *must* ? By distraining, a man carves out justice without judge or jury, for himself; and it is well enough to have the option ; but no prudent man would use it without a great emergency, much less have such an odious measure forced on him, as his only remedy. It is always harsh ; the blow comes without a word, on the tenant's property, like a bolt from the sky. It is the tiger's process in hunger. Tenants commonly elude it if they can, by fraud or guile, and sometimes resist by direct violence, such as it seems was preconcerted in this very case, and in full readiness, if a distress had been attempted. There

is no other way to confer remedies which the law does *not* give, so as to make the use of them lawful, if the party chooses to adopt them, than by conferring them in the deed ; but who ever heard of such a useless thing, as making a private grant of a legal remedy.   Thus the power to enter judgment on a bond by confession, is granted in a private deed called a warrant of attorney ; but who ever saw it inserted in a bond, that if the money was not paid at the day, the obligee might bring an action of debt on it ?   Who ever supposed that the obligee could not sue by *capias*, and hold the obligor to bail, because he had the option of taking a judgment by confession ?   The person who drew this rent charge, was evidently learned in his profession ; he provided such additional remedies as the *law does not give*, in the deed ; had he gone further and inserted in it, such as the law does give, he would have been the scoff of that day, and the contempt of this.   He took care however not to insert a single word that should impair the legal remedy by assize.

But still the deed is called up ; the deed ; does not the deed give the entry which the plaintiff is seeking for, and if so, must he not comply with the condition?   I answer once for all, that this action ought to fail, if it depended on the entry granted in the deed ; an entry by the party's own act without judge or jury ; a hasty entry in sixty days ; an entry only on condition of there being no sufficient distress on the premises.   The plaintiff gives this private, special, optional, conventional, cumulative power of entry to the winds, and stands on the broad ground of common law rights, called emphatically birth rights, because it was provided before he was born, to recover by assize, the land out of which the rent is issuing, and hold it till the arrears of rent are made out of the issues and profits of it, unless they are sooner paid.

7th. If the plaintiff recovers the land, it is asked how the tenant is ever to get it back again ?   This loses sight of the question before us, and agitates another question not now before the court.   But the answer is both easy and plain.   The proof in an assize for rent, depends on the nature of the rent-charge, whether it forfeits the land forever in case the rent is arrear ; or

on the other hand, whether it is to be holden only till the rent is made out of the profits. If the plaintiff recovers for forfeiture, the tenant shall never have it back again. It is an estate upon condition. *Litt. sect.* 326, 327 ; *Co. Litt.* 202, *a.* But in this case, the law flings in his way, every possible obstruction ; he must demand the rent in person, or by an agent constituted by deed ; he must demand it on the land, the most public part of it, at the front door only ; if no person appear, he must shout his demand into the air ; it must be on the precise day the rent becomes due, not the day before or after, and at a convenient time before sunset ; for the precise sum due, not a penny more nor a penny less. *Adams on Eject.* 149. But if the provision of the rent-charge be as in this case, to hold only till out of the profits, he has made the rent arrear, then, when that is *satisfied* says LITTLETON, "*the tenant shall re-enter into the same land, and hold it as he held it before.*" *Litt. sect.* 327 ; *Co. Litt.* 233, *a.* The plaintiff's right ceases, the moment the rent is made or paid ; and if he does not give up the land voluntarily, he may be evicted by an ejectment at law, and be made to pay all damages and costs. Thus the tenant gets his land again.

On the whole, as the plaintiff would recover the corporeal tenement in an assize, he may do it just as well in ejectment, seeing he is entitled to it by law, and therefore judgment ought to be rendered for him.

RYERSON, J. Among the objections urged against the verdict, on the recent argument, one was, that the rent instead of being a freehold, was only a succession of terms for years, or in other words, was a chattel real, not transmissible to the heir, but to the executor ; and hence, the lessor, who claimed under the heir, had not shown a valid title thereto. The view which I have taken of the whole case, does not make it necessary to express an opinion on this point ; though I perceive no sufficient reason to differ from what was formerly said by Justices FORD and DRAKE, in this same case, 6*th Hal. Rep.* 262.

And again : As to the want of seizin in severalty, of this rent, of $11 20, if the defendant be not estopped by his own acts from denying it, the plaintiff has given sufficient evidence,

until overcome by contrary proofs; as by showing that the payments were made under a mistake, or misapprehension of the lessor's rights; or that the defendant did not therein recognize him as the sole owner.

I shall, however, rest my opinion in this cause, simply on the terms of the contract. As this rent is neither more nor less than a rent charge, the right of Farley, the lessor, to enter on the land in question, to make distress, or for other purpose connected with the rent, must be looked for in the deed, and not elsewhere. By it, in very plain terms, a right to enter upon and hold the lands, is made to depend on two events; the rents being in arrear, and there being no sufficient distress. It must be recollected, that those under whom Farley claimed, had parted with their entire interest in the premises. A right to re-enter, is indeed provided, not by operation or implication of law, but simply by the deed. In this, the parties had a right to make what stipulations they thought proper. But I have yet to learn our right or power, to substitute others as the conditions upon which their respective power over the estate, was to depend. Concede it, that Farley's title, as attempted to be made out, was in all other respects perfect, he could only occupy the land on the failure of a distress. It rested on him to prove that no distress could be had on the premises. So far from showing this, it abundantly appears, that distrainable goods were on the premises, to at least fifty times the amount of the rent that might be distrained for. I lay out of the case, what was proved about the resolution formed to resist a distress: First, because I am not informed that the resistance to one right, will create a substitute; and secondly, because a mere resolution, not communicated to the adverse party, and not attempted to be enforced, could give him no additional rights. It is not in fact, a matter apart from overt acts, which our law in any case takes cognizance of. Farley *could* have distrained, and if resisted, the law would have provided him an adequate redress for *that* injury. The owner of the land was bound to provide, on the same, a sufficiency of goods and chattels to countervail the rent, or lose his possession. While the former existed, the latter could not be disturbed. But it is not necessary to go so far. It is enough

Den ex dem. Farley *v.* Craig.

to say he has not shown us that the distress *could not* be taken. That it ever would have been obstructed, does not appear. Our law grants *locum penitentiæ* to all men; and at any time before an act committed, they may change their purpose and save themselves from consequences. It belongs solely to a different power, to discern and visit with an adequate return, a mere intention, not followed up by acts.

But it was contended on the argument of this cause, that by the common law, a mere denial of the rent when lawfully demanded, might, by the election of the owner thereof, be considered as a disseizin of his freehold therein; that for this disseizin, an assize was the appropriate remedy; and that the modern action of ejectment has been substituted for the assize; and therefore this action has been properly brought. It was further added, that the remedy by the contract, was cumulative, not superseding the action to which the party anciently had right, independently of the clause of distress, and re-entry contained in the deed. And I was somewhat surprised on the argument of this cause, to find that the counsel of the defendant, did not seem seriously to question the doctrine, that in a case like the present, an ejectment would lie where anciently an assize could have been maintained. And in looking into what was said in this case, when it was formerly before the court, I find Justice FORD, speaking of this cumulation of remedies, and the party's right to elect among them, says, "in this case, he elects to forego all others and pursue an assize, or ejectment, which is a remedy substituted by modern times in its place." And Justice DRAKE says, "by the ancient law," Farley "would have been entitled to his assize, and is of course by the modern law, entitled to his action of ejectment." Add to this, the weight of the name of the late eminent counsel, under whose direction this action was brought and prosecuted to trial and verdict, and the position is supported by an accumulation of opinion, which it would not seem safe to assail. Yet I am not satisfied that it is correct. I cannot believe these remedies as applicable to this case, co-extensive. It is laid down very generally in the books, that an assize will lie for an incorporeal hereditament in general, and especially for a freehold *rent.*

Thus it lies for rent-service, rent-charge and rent-seck; and so of toll, tonnage, pontage, passage, offices, &c. *Fitz. Herbert's Nat. Brev.* 178; *let. D. G.; Com. Dig.* 573; *Tit. Assize, B.* 2; *Bac. Ab. Tit. Assize B.; Booth on real actions, New York ed.* 263, 4, (*marg.* 211.) Now, it is expressly laid down, and especially in modern writers, that the action of ejectment does *not* lie, in *general,* for an incorporeal hereditament, and expressly, for a rent. 2 *Bac. Ab. Eject. D.; Com. Dig. plead.* 2 *Z.; Croke Car.* 492; *Chit. Pl.* 1*st Vol.* 188—2*d Vol.* 394 *and note;* 3*d Bl. Com.* 206, *Ad. on Eject.* 16. In theory also, these remedies are different. The action of ejectment is, in *form at least,* an action of tresspass *vi. et. armis.* Whereas, a short examination and comparison of the books just referred to, and 1*st Ch. pl.* 123, 4, 5 *and* 143, will show that an assize was maintainable in many cases, where there is no *colour* that trespass would lie, and where case is the *only* and *appropriate* modern remedy. May I not then, draw the inference from these undoubted truths, that the doctrine respecting the substitution of ejectment for the assize, has been laid down in terms too broad and comprehensive? The remedies are not co-extensive, and I cannot perceive, that the inference is fairly drawn, that where an assize would lie for rent, issuing out of land, an ejectment would now lie for the land itself. Land and rent are things as different, in our law, as can well be imagined. The one most obvious to our senses, the other existing in the mind only ; and in no manner the object of sensation. And although money, or other tangible property, be the fruit of rent; yet the *rent itself,* the inheritance, is wholly ideal, one of those metaphysical subtleties, with which our law of real estate, abounds. 2 *Bl. Com.* 20. Now it was for this ideal creature that the action of assize anciently was brought. The plaintiff had his writ for his freehold, in general terms, in D or other place, but he made his plaint of the office, or rent, or other thing. The judgment followed, " that he recover seizin of the tenements in plaint." *Fitzh. Nat. Brev.* 178, *F.; Com. Dig. Vol.* 1*st* 584, *Assize B.* 26. *Booth on real actions,* 270, 295, *margin* 212, 218. I do not know that it is practicable for me, with the aids to which I have access, to form an accurate and clear notion of the assize,

and the process thereon. But it seems altogether incongruous upon such a record, to make an award of execution, such as a writ of possession, or seizin of the *land itself*. The tenements in the plaint, in an assize for rent, were not the land, or parcel thereof; 2 *Bl. Com.* 41; although issuing out of it. And an award of the land itself, or even of the possession of the land, would be awarding a thing entirely different, as has been shown, from that demanded and recovered. I will not undertake to say, that in executing a writ of seizin of a freehold rent, the Sheriff might not, under some circumstances, deliver the crops, or even the *possession* of the land, whereof to make the arrears of rent. Whether he could or could not, I have no intention to express an opinion. But such a delivery, would no more prove that the land, or the possession of the land, was the *object* of the action, than would an extent of the land for a debt, prove that the land and not the debt, was the object sought in the action. The land in both cases, would be only the means of obtaining the object sought. In the action of ejectment however, the land is the principal thing sought to be recovered. Thus by the doctrine against which I contend, we not only have a substitution of remedies, but of the thing for which the remedy is sought.

It has been supposed, that as in the assize for rent, the land out of which the rent issued, was *put in view*, one object of the action, was a recovery of the land itself. But it does not appear to me, that this consequence can be deduced. If the tenant was ousted of the land, by a title paramount, the rent was barred. And one object of a view may have been, that the recognitors might have knowledge, whether an ouster in fact had been committed, and perhaps other objects were sought thereby, as to see if any inclosure, or forestaller, &c. had been committed, which might be the very *acts* constituting the disseizin of the rent, which the action was brought to redress 3 *Bl. Com.* 171. And I would add, that a view seems to have been an *essential part* of the *action*, and therefore commanded as a matter of course, without any precise object, when a disseizin of an incorporeal hereditament was complained of. For it should be borne in mind, that an assize was originally pro-

vided to redress an ouster of tenements corporeal; and its subsequent application to incorporeal hereditaments, was by a legal fiction, *the disseizin by election;* 3 *Bl. Com.* 170–1, *and* 184–5 *note;* having little more reality, than our modern lease, entry and ouster in ejectment.   The form of the writ in commanding a view, was retained, in this its new application, where the substance did not require it.   In the same manner, John Doe and Richard Roe, long continued " to pledge their airy responsibility," (EWING, C. J.,) after all real security was dispensed with.

From the best view which I can take of this subject, the action of ejectment has been substituted for the assize, where a corporeal hereditament was its object.   But this substitution has never been made in the case of incorporeal hereditaments · generally, and especially of a rent.   And I can find nothing in the books to give countenance to the idea, that where a man was disseized of a *rent* issuing out of the land, he might maintain an assize for the *land itself.*   It appears to me therefore conclusively, that the laboured effort to revive the ancient doctrine of disseizin by election, and to prove that the remedy by the deed, was only cumulative, if successful, could not avail to support this action.   It should be kept constantly in view, that all the dissseizin of which Farley could complain, was a disseizin of the rent, and not of the land.   The latter having been granted in fee simple, he could have nothing of which he might be disseized, or dispossessed, until a right, or interest vested in him, (if it ever should) by the condition subsequent, of failure of a distress, the rent being in arrear.

The last remark forms a sufficient answer to the position assumed on the argument, that the right of entry which would support this action, resulted not from the deed, but from the disloyalty of the tenant, in denying the right and title of his landlord, and dissolving the only ligature between them.   But in addition to what has just been said, it may be remarked, disloyalty can not be imputed where there is no tenure.   Farley, if landlord in any sense, was not in the sense which disloyalty would imply.   The land was not held of him.   Since the statute of *quia emptores,* a deed such as both parties claim

under, extinguishes all tenure between grantor and grantee, the latter holding only of the lord paramount; *Rev. Laws*, 166, 3 *Cruise*, 308, *Tit.* 28 *Rents; Ch.* 1*st, Section* 7; 353 *Ch.* 3, *Section* 15. As has before been remarked, Farley had no interest in the land, no reversion to which this rent was incident. The temporary interest even which *might* result from the operation of the deed, the rent being in arrear, and no distress on the premises, had never taken effect. The only " obligation between," the parties, was " merely to payment." *Gilbert on rents* 105. A denial of this, might deprive and disseize Farley of the rent, (according to the notion of a disseizin of an incorporeal hereditament,) and give him a right to be re-seized of the rent, but does not show a right to the possession of the land itself.

If I am correct in the preceding positions, that this controversy must be determined by the deed: that under it the plaintiff hath no right of entry, unless on the failure of a *distress* as well as payment: that a disseizin of the *rent*, which is remediable by an *assize*, will not sustain an ejectment for the land: that there is no reversion, or seignory in Farley, which can entitle him to claim a forfeiture, but only a mere right to enter upon a precise condition which has not yet happened: then this verdict cannot be sustained.

It seems not to be necessary to enquire whether it can be supported under our statute, *Rev. Laws*, 186, 9, *Section* 7*th*, which by its terms, cannot be invoked to the plaintiff's aid, while there is a sufficient distress on the premises. It is true, in a modern case in Great Britain, *Roe* v. *Davis*, 7 *East*, 363, it was held that the failure of a distress, was not necessary to support an entry under their statute, 4 *Geo.* 2, *Ch.* 28 *Section* 2, of which, ours is a transcript. But the previous decisions in England, as well as those in New York, under a similar statute, which have fallen under my observation, give controlling importance to the clause relative to a distress. To the last mentioned class of decisions, I can find no reason to object. And in truth, the counsel of the plaintiff in this case, did not attempt to sustain the verdict, by force of the statute.

And it is equally clear, that it cannot be supported as an entry at common law, for a breach of the express condition in the deed: 1st, because the two contingencies on which the right of entry depended, had not both happened. And 2dly, because the niceties of a common law entry, had not been complied with. See the principles and cases collected in 1st *Saunders*, by '*Williams*, 287, *note* 16.

I must here be allowed to notice the case of *Jackson* v. *Collins*, 11th *Johns. page* 1, which was pressed upon us in the argument in this cause, and which seems to militate against what I have above supposed to be the law. It is with unfeigned diffidence and reluctance, that I undertake to oppose any conclusion to which the court, by which it was decided, has arrived. But I am unable to comprehend *how* they have arrived at that conclusion. The court put their opinion on the denial of the *right* to rent, as superseding the necessity of a formal demand. The question however is, had the rent been demanded with all possible formality, and then not paid, would that have given the party a right of entry for non-payment, when the deeds superadds the additional default of distrainable goods on the premises, before the tenant's possession was forfeited ? This clause in the deed, is not noticed. Why was this? Did the court esteem it of no value? Why then was it inserted in that, and in this, and so many other deeds? Is it possible that the attention of the court and counsel, was misdirected by those cases arising on leases, *without* the clause relative to a distress? The same court in that, as well as in other cases, place stress on such a clause in the *statute*, yet give no attention to it, as found in the deed. The court speak of the case, as of one at common law, and a forfeiture incurred by denial merely of payment, upon demand duly made, or other acts equivalent thereto. But I can find no traces of such forfeiture at common law, unless in pursuance of the stipulations of the deed or feoffment. It is true, I find such expressions as the following, to-wit: " The recognitors giving seizin (of the rent) by a twig, or turf," of the land; *Gilbert on rent* 20, 1, 2; and that " when the rents were reserved on the durable estate of the feud, the feud itself —and the chattels thereupon, were pledged upon it, to answer

Den ex dem. Farley *v.* Craig.

the rent, and the lord had his *cessavit* to recover the land itself. *Gil. on rents* 93, 4. But this last proceeding by writ of *cessavit,* has its foundation upon the statute of Gloucester, *6th Ed. 1st, Ch.* 4, and the statute of Westminster 2, 13*th Ed.* 1, *Ch.* 21, 41, giving the party a remedy, which he had not at the common law. *Jac. Law Dic. in verbo cessavit, Fitz, H. N. B.* 208—*H.* And I suppose the giving seizin of rent, by twig or turf, nothing more than a formal technicality, indicating at most, the lands chargeable, and not drawing after it, the actual possession of the lands, or the pernancy of the issues and profits thereof. The real substantial redress which the party had in his assize, was his damages assessed by the jury, and adjudged to him, together with his seizin. If therefore, at common law, there was no forfeiture for non-payment of rent, either of the title or possession of the land, unless pursuant to the terms of the lease or feoffment; I am at a loss to comprehend how the court could sustain the verdict in *Jackson* v. *Collins,* when the forfeiture, by the terms of the lease, was not to be incurred by the *non-payment* merely of the rent, under any circumstances; but by the failure of a distress, the rent being in arrear. It may be further remarked, that the Supreme Court of New York, treat the case as one strictly of landlord and tenant. If it were such, it needs no further notice. It can then form no rule for the case now before us, which is *not,* as has been attempted to be shown, a case of landlord and tenant.

I conclude therefore, that this verdict must be set aside, and a new trial granted. Or if it be more in conformity to the arrangement, under which it was taken, that this state of the case be treated as a special verdict, then, that judgment be entered for the defendant.

*Judgment for defendant.*